**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| Noah Miller,<br><br>*Plaintiff*,<br><br>v.<br><br>Alliant Capital Management, LLC<br><br>*Defendant*. | **Case No.:**<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>**(1) THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 *ET SEQ.;***<br><br>**(2) THE TEXAS DEBT COLLECTION ACT, TEX. FIN. CODE § 392.001 *ET SEQ.***<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. Plaintiff Noah Miller ("Plaintiff") brings this action challenging the illegal actions of Alliant Capital Management, LLC ("Defendant"), which, through its attempts to collect a debt alleged to be owed by Plaintiff, violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*.; and the Texas Debt Collection Act, Tex. Fin. Code § 392.001 *et seq*.

2. In enacting the Fair Debt Collection Practices Act ("FDCPA"), Congress found that "there is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," and that "abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress also found that the "existing laws and procedures for redressing these injuries are inadequate to protect consumers," and that "abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce." 15 U.S.C. §§ 1692(b), (d).

3. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain directly to Plaintiff, which Plaintiff alleges based on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

5. Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such specific violation.

**JURISDICTION AND VENUE**

6. Jurisdiction is proper under 28 U.S.C. § 1331 as Defendant's violation of a federal statute presents a federal question.

7. Venue is proper in the United States District Court for the Eastern District of Texas pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant, in conducting substantial business in the State of Texas, is subject to the court's personal jurisdiction. Furthermore, a substantial portion of the events underlying this lawsuit occurred in the Eastern District of the State of Texas.

**PARTIES**

8. Plaintiff is a natural person who, at all times relevant to this action, resided in the City of Sherman, State of Texas.

9. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

10. Defendant is a person who uses an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and is therefore a "debt collector" as that phrase is defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

11. On or about March 2025, Plaintiff opened an unsecured personal loan account ending in ******0268 with DR Bank.

12. The current creditor is Velocity Investments, LLC under Creditor Account No. 20720013.

13. Defendant was later assigned the alleged debt for the purposes of collection.

14. On or about June 17, 2026, Defendant called Plaintiff's telephone number ending in 3198.

15. Plaintiff did not answer the phone call, and Defendant left Plaintiff a voicemail.

16. The voicemail was Defendant's first known communication to Plaintiff regarding the alleged debt.

17. Minutes later, Defendant called Plaintiff's brother, Kaleb Miller.

18. Plaintiff had not authorized Defendant to contact Plaintiff's family members regarding Plaintiff's alleged debt or Plaintiff's whereabouts.

19. Plaintiff promptly returned Defendant's call, verified Plaintiff's home address and phone number, and informed Defendant that he was busy and would need to call Defendant back later.

20. Despite having made direct contact with Plaintiff and verifying Plaintiff's phone number and home address, Defendant continued to contact Plaintiff's family members, including Plaintiff's mother, stepfather, and brothers.

21. On or about June 25, 2026, Defendant called Plaintiff again.

22. That same day, Defendant called Plaintiff's mother, stepfather, and his brothers Luke and Jaycob for the purpose of locating Plaintiff, confirming Plaintiff's whereabouts, or otherwise pressuring Plaintiff to respond to Defendant.

23. Plaintiff had not authorized Defendant to contact his mother, stepfather, or any of his brothers.

24. Defendant's decision to contact Plaintiff's family was wholly unnecessary and served no legitimate purpose. Defendant already possessed Plaintiff's verified telephone number and home address and had already communicated directly with Plaintiff. Accordingly, there was no reasonable justification for Defendant to bypass Plaintiff and involve his family.

25. On or about July 2, 2026, Defendant called Plaintiff again.

26. During this call, Plaintiff verified his email address.

27. At this point, Defendant had verified Plaintiff's telephone number, home address, and email address with Plaintiff directly.

28. On or about July 5, 2026, Defendant called Plaintiff again, and Plaintiff missed this call.

29. Later that same day, Defendant called and left a voicemail with one of Plaintiff's brother, Jaycob Miller, who Defendant previously called on June 25, 2026, seeking to verify Plaintiff's whereabouts.

30. Defendant followed a recurring pattern of contacting Plaintiff directly, and that same day, contacting one of Plaintiff's family members regarding Plaintiff.

31. Defendant repeated this sequence at least three separate times.

32. Defendant's repeated calls to Plaintiff's family members were not reasonably necessary to obtain Plaintiff's location information because Defendant had already verified Plaintiff's telephone number, home address, email address, and was in active contact with Plaintiff.

33. Defendant's repeated conduct suggests that Defendant used Plaintiff's family members as leverage to pressure Plaintiff to respond to Defendant's collection efforts.

34. Such conduct was also inconsistent with a good faith attempt to merely confirm Plaintiff's location information.

35. On or about July 5, 2026, Plaintiff informed Defendant that he cannot continue to receive calls from Defendant during Plaintiff's work hours.

36. On or about July 6, 2026, Defendant sent Plaintiff a written collection communication regarding Plaintiff's alleged debt, which stated Plaintiff's account balance, identified the original creditor, and included a settlement offer requiring Plaintiff to respond by July 31, 2026.

37. The letter included a section purporting to identify certain consumer rights and disclosures, including a statement that this list "does not contain a complete list of rights consumers have under state and federal laws."

38. However, Defendant's letter did not include certain disclosures required by 15 U.S.C § 1692(g), including Plaintiff's right to dispute the alleged debt within thirty (30) days after receipt of the notice, nor Plaintiff's right to obtain verification of the alleged debt if disputed in writing.

39. Indeed, the settlement deadline in Defendant's letter was dated July 31, 2026, while the settlement letter itself was dated July 6, 2026, and contained no language stating Plaintiff's right to dispute the validity of the debt in writing.

40. Defendant's calls to Plaintiff's family members exposed, or, at minimum, suggested that Plaintiff was being pursued by a debt collector regarding a private financial matter.

41. As a result, Plaintiff's family members were unnecessarily drawn into Plaintiff's private financial affairs.

42. Defendant's conduct caused Plaintiff stress, anxiety, embarrassment, frustration, and disruption during Plaintiff's work hours.

43. Defendant's repeated communications with Plaintiff's family members violates 15 U.S.C. § 1692c(b) as Defendant made communications to third-parties in connection with the collection of the alleged debt despite having already spoken with and obtaining contact information from Plaintiff.

44. Defendant did not properly follow the statutory guidelines surrounding acquisition of location information pursuant to 15 U.S.C. § 1692b, as Defendant communicated with Plaintiff's family more than once despite having Plaintiff's location information on file.

45. By repeatedly contacting Plaintiff's family members after Plaintiff already provided contact and location information to Defendant, Defendant harassed Plaintiff in violation 15 U.S.C. § 1692d.

46. Defendant violated 15 U.S.C. § 1692g(a) by failing to provide Plaintiff with the required validation notices, including notice of Plaintiff's right to dispute the debt within thirty (30) days, and Plaintiff's right to obtain verification of the debt if disputed in writing.

47. Defendant violated 15 U.S.C. § 1692g(b) by using a written collection communication that overshadowed and was inconsistent with Plaintiff's thirty (30) day validation rights, including by requiring Plaintiff to respond to a settlement offer before the expiration of the thirty (30) day validation period.

48. Defendant violated Tex. Fin. Code § 392.302 by engaging in harassing, abusive, or oppressive debt-collection conduct, by repeatedly contacting Plaintiff and Plaintiff's family members.

49. Defendant violated Tex. Fin. Code § 392.304(a)(19) by using false representations or deceptive means to collect the debt or obtain information concerning Plaintiff,

by contacting Plaintiff's family members despite already having Plaintiff's direct contact information.

**COUNT I**

**<u>Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*.</u>**

50. Plaintiff re-alleges and incorporates paragraphs 1-51 as if fully set forth herein.

51. The foregoing acts and omissions of Defendant constituted numerous and multiple knowing and/or willful violations of the FDCPA.

52. As a result of Defendant's knowing and/or willful violations, Plaintiff is entitled to statutory damages of $1,000.00 for every violation, pursuant to 15 U.S.C. § 1692k(a)(2)(A) and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

**COUNT 2**

**<u>Violations of the Texas Debt Collection Act, Tex. Fin. Code § 392.001 *et seq*.</u>**

53. Plaintiff re-alleges and incorporates paragraphs 1-51 as if fully set forth herein.

54. As a result of Defendant's knowing and/or willful violations, Plaintiff is entitled to actual damages, injunctive relief, reasonable attorney's fees and costs, and all other relief available under Tex. Fin. Code § 392.403.

**WHEREFORE**, Plaintiffs prays for the following relief:

a. An award of statutory damages of $1,000.00 to Plaintiffs pursuant to 15 U.S.C. § 1692k(a)(2)(A) from Defendant;

b. An order enjoining Defendant from contacting Plaintiff or Plaintiff's family members through phone calls in the future.

c. An award of actual damages to Plaintiff pursuant to 15 U.S.C. § 1692k(a)(1) and Tex. Fin. Code § 392.403(a)(2).

d. An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3) and Tex. Fin. Code § 392.403(b).

d. Such further and other relief the Court deems reasonable and just.

**JURY DEMAND**

56. Plaintiff is entitled to, and hereby demands, a trial by jury on all issues so triable.

Date: September 29, 2026

**KAZEROUNI LAW GROUP, APC**

By: */s/Abbas Kazerounian, Esq.*
Abbas Kazerounian, Esq. (SBN: 24090982)
ak@kazlg.com
KAZEROUNI LAW GROUP, APC
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
Lead Counsel for Plaintiff